IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LAURIE ARNDT,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 14-5586** |
| v. | : | |
| | : | |
| **WELLS FARGO BANK, N.A.,** | : | |
| **MORTGAGE CONTRACTING** | : | |
| **AND SERVICES a/k/a** | : | |
| **MORTGAGE CONTRACTING** | : | |
| **SERVICES LLC,** | : | |
| **Defendants.** | : | |

**MCHUGH, J.**                                                                                             **MAY 20, 2015**

## MEMORANDUM

Plaintiff Laurie Arndt has filed suit against Defendants, Wells Fargo Bank, N.A. ("Wells Fargo") and Mortgage Contracting and Services ("MCS"), alleging that Defendants unlawfully entered her former residence, changed the locks, and stole her personal belongings. Specifically, Plaintiff has brought claims for trespass, conversion, negligence, invasion of privacy – intrusion upon seclusion, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED"). Plaintiff also seeks punitive damages. Defendants have moved to dismiss Plaintiff's claims for invasion of privacy, IIED, NIED, and punitive damages. I will grant Defendants' Motions in part, and deny them in part, based on the following conclusions: (1) the statute of limitations has run for Plaintiff's invasion of privacy claim; (2) the Complaint alleges insufficiently extreme conduct to establish IIED liability; (3) Plaintiff failed to allege a contractual or fiduciary relationship or duty sufficient to support a claim for NIED; and (4) it is premature to dismiss Plaintiff's request for punitive damages at the pleading stage.

1

### I.      Factual Allegations in Plaintiff's Complaint

Plaintiff formerly lived and worked at 4940 Spruce Street, Schnecksville, Pennsylvania ("the Property"). She was the sole tenant according to an agreement she had with Lee, Jill, and Susan Gibbs ("the Gibbs"), the owners of the Property, which entitled her to exclusive possession. In addition to utilizing the Property as her primary residence, Plaintiff's home internet sales business operated out of the Property.

On January 31, 2012, a mortgage foreclosure judgment was entered in favor of Wells Fargo and against the Gibbs due to their failure to pay the mortgage. Wells Fargo subsequently executed the judgment and sold the Property at a Sheriff's sale on July 27, 2012. A Sheriff's Deed transferring the Property to Wells Fargo was recorded on September 27, 2012.

Wells Fargo employed MCS' services to "secure and winterize" foreclosed properties, in this case being Plaintiff's residence. On or about October 2, 2012, Ms. Arndt found a letter posted on the front door of the Property telling her that MCS believed the home to be vacant and intended to secure and winterize it. The letter further provided that if the home was still inhabited, the resident(s) should contact MCS, and MCS would forego securing and winterizing the Property. Ms. Arndt alleges that she called MCS immediately upon receipt of the notice, and advised that the Property was not vacant, as she continued to reside there. MCS assured her that no action would be taken to secure or winterize the Property.

On October 12, 2012, Ms. Arndt returned to her home and found the locks had been changed. According to the Complaint, the Property would have appeared inhabited; the grounds and yard were maintained, and the interior was fully furnished, containing all of Plaintiff's worldly possessions. Once again, notice from MCS was on the front door providing contact information. Ms. Arndt immediately contacted MCS, but she only reached the company's

answering machine. Ms. Arndt left a voicemail requesting a return call. She was unable to gain entry to her home that evening, requiring her to make alternative sleeping arrangements. Before leaving, Plaintiff surveyed the Property by checking the doors and windows, and it appeared the Property was secure, with her possessions left undisturbed.

On October 13, 2012, Ms. Arndt returned to the Property and found her possessions remained undisturbed inside. She once again contacted MCS and spoke to an agent/employee who identified himself as Justin. Justin assured her that the locks should not have been changed and that MCS would correct the problem and restore her access to the Property. Ms. Arndt was again forced to find alternative sleeping arrangements for that evening.

On October 14, 2012, Ms. Arndt returned to the Property, but this time found the motion-sensing light near the garage had been broken, and items were missing. She gained access to the Property with the assistance of a neighbor and found the interior in shambles, with many items damaged or missing. Plaintiff concluded that Defendants had rifled through her belongings, and removed certain valuables, including personal belongings and inventory for her online sales business. Specifically, jewelry, clothes, shoes, and a large lawn tractor were missing.

Plaintiff asked her neighbor to contact the Pennsylvania State Police to report a burglary. The police investigation noted that there were no signs of forced entry, and the garage doors were padlocked from the inside. The investigation also revealed that the missing items were in Defendants' possession. Despite Plaintiff's requests for the return of her belongings, she claims that Defendants refused to return her personal property.

On December 17, 2012, Wells Fargo mailed a letter to Arndt informing her of the Sheriff sale and advising her of her rights as a tenant. On May 20, 2013, Wells Fargo filed an action for ejectment against the Gibbs and Ms. Arndt. An Order was entered on November 18, 2013

granting Defendants' possession of the Property. Plaintiff contends that this action establishes that Defendant Wells Fargo knew she occupied the Property, as she was separately named as a Defendant.

## II.     Discussion

On September 29, 2014, Plaintiff filed her Complaint in this District, asserting diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff maintains that she was entitled to possession of the Property until the conclusion of judicial proceedings on November 18, 2013, and Defendants' entry upon the Property and all acts committed therein were unlawful, including the destruction and conversion of her personal belongings. Defendants have filed Partial Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), requesting dismissal of Counts IV (Invasion of Privacy), V (IIED) and VI (NIED) of Plaintiff's Complaint as well as her request for punitive damages. In analyzing Defendants' Motions, I must assume all of Plaintiff's factual allegations are true, draw all inferences in her favor, "and then determine whether they plausibly give rise to an entitlement for relief." Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212 (3d Cir. 2013), as amended (May 10, 2013) (discussing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009)) (internal citations omitted).

   a. *Plaintiff's Claim for Invasion of Privacy has Expired*

Ms. Arndt claims that Defendants invaded her privacy through the distinct tort of intrusion upon seclusion. As declared by the Third Circuit, "state tolling principles are generally to be used by a federal court when it is applying a state limitations period." Bohus v. Beloff, 950 F.2d 919, 924 (3d Cir. 1991). There is a "one-year statute of limitations expressly provided for invasion-of-privacy claims." Burger v. Blair Med. Associates, Inc., 600 Pa. 194, 199, 964 A.2d 374, 377 (2009); 42 Pa. C.S. § 5523 ("The following actions and proceedings must be

4

commenced within one year: (1) An action for libel, slander or invasion of privacy. . . . ").
"[T]he statute of limitations begins to run as soon as the right to institute and maintain a suit arises."  Fine v. Checcio, 582 Pa. 253, 266, 870 A.2d 850, 857 (2005).

Both Defendants argue that Plaintiff's invasion of privacy claim has gone stale.  In viewing the facts in Plaintiff's favor, the clock started running on her claim when she discovered her house ransacked on October 14, 2012—significantly more than a year before her September 29, 2014 initial filing in this action.  Even Plaintiff concedes that her claim for invasion of privacy was filed after the statute of limitations had run.  However, Plaintiff argues that the doctrine of equitable tolling preserved her cause of action.  Under Pennsylvania law, "[m]istake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute."  Id. at 266.  There are, however, limited exceptions that act to toll the running of a statute of limitations, including the discovery rule and the doctrine of fraudulent concealment.  Id.

> [W]hen a court is presented with the assertion of the discovery rule's application, it must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause. . . . In addition to the discovery rule, the doctrine of fraudulent concealment serves to toll the running of the statute of limitations. . . . [The doctrine] provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts.

Id. at 267, 70–71.  Plaintiff has the "burden of proving fraudulent concealment by clear, precise, and convincing evidence."  Id. at 271.

Plaintiff specifically argues that Defendants actively concealed information, causing her to delay her filing.  Plaintiff further contends that she reasonably relied on the law enforcement investigation, and the police did not provide her with any indication about the responsible party

until after the one year statute of limitation had expired.[1]  This argument runs counter to the plain allegations in Plaintiff's Complaint that the police conducted an investigation on October 14, 2012 and concluded that her belongings were in Defendants' possession.  Plaintiff also pleads that Defendant MCS posted their notices right on her door, and Wells Fargo advised her of the Sheriff's sale and named her as an individual Defendant in their ejection action.  As a result, exercising reasonable diligence, the latest time that Plaintiff could claim to be on notice about Defendant Wells Fargo's involvement in this case is December 17, 2012 when she received notice of the Sheriff's sale—still more than a year prior to her filing.  Finally, and perhaps most tellingly, MCS agent/employee Justin allegedly admitted on October 13, 2012 that MCS mistakenly accessed the Property, and further conceded that MCS had a responsibility to correct the problem and restore Plaintiff's access to the Property.

Thus, there are no allegations currently before the Court involving Defendants' fraud or concealment, and Plaintiff in "exercising reasonable diligence" certainly could have ascertained that she was injured by Defendants within the applicable statute of limitations period.  Even in viewing the Complaint and all inferences drawn therefrom in the light most favorable to Plaintiff at this early stage, because she has failed to allege facts supporting fraudulent concealment or any other valid reason for her delayed filing, the doctrine of equitable tolling cannot preserve her cause of action for invasion of privacy – intrusion upon seclusion.[2]  This claim will be dismissed

---

[1] In Plaintiff's brief, she avers that the Pennsylvania State Police did not advise her that Defendants had taken her personal belongings until the fall of 2013.  However, there is no mention of this delayed time frame in Plaintiff's Complaint.

[2] "While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994) (citing 5A Wright and Miller, Federal Practice and Procedure: Civil 2d, § 1357); Williams v. Temple Univ. Hosp., 400 F. App'x 650, 653 (3d Cir. 2010) (affirming District Court's dismissal of state law claims as time-barred because complaint failed to raise possibility of equitable tolling or continuing violation doctrine on its face).

without prejudice, allowing Plaintiff the opportunity to amend her Complaint should any facts exist to support her allegations that Defendants engaged in fraudulent concealment sufficient to toll the statute of limitations under Pennsylvania law.[3]

> b. *Plaintiff's Allegations Are Not Sufficiently Extreme and Outrageous to Establish IIED Liability*

In pleading her IIED claim, Plaintiff characterizes Defendants' alleged conduct as "outrageous." Because Defendants successfully argue that their alleged conduct does not rise to the rigorous level of "extreme and outrageous" required under Pennsylvania law to sustain an IIED claim, I will grant Defendants' Motions as to Count V of Plaintiff's Complaint.

IIED liability requires the intentional or reckless infliction of "extreme and outrageous conduct" such that it "causes severe emotional distress to another" or bodily harm. Hoy v. Angelone, 554 Pa. 134, 150, 720 A.2d 745, 753 (1998). The level of outrageousness required to support a claim is extraordinarily high.

> [O]ur Superior Court has noted, "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." [4] Buczek v. First National Bank of Mifflintown, 366 Pa. Super. 551, 558, 531 A.2d 1122, 1125 (1987). Described another way, "[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." Restatement (Second) of Torts § 46, comment d; Daughen v. Fox, 372 Pa. Super. 405, 412, 539 A.2d 858, 861 (1988).

---

[3] See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008) ("if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile").

[4] "Examples of such behavior include a driver fatally striking plaintiff's son and, without notifying the authorities, burying the body [in a field;] defendants intentionally falsifying records to implicate plaintiff in a homicide for which plaintiff later went to jail[;] and a doctor telling the press that plaintiff was suffering from a fatal disease when the doctor knew that information was false." Brown v. Udren Law Offices PC, No. 11-2697, 2011 WL 4011411, at *4 (E.D. Pa. Sept. 9, 2011) (citing Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118 (1970); Banyas v. Lower Bucks Hosp., 437 A.2d 1236 (Pa. Super. Ct. 1986); Chuy v. Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979)).

Id. at 151; see, e.g., Daughen, 539 A.2d at 864 (holding, as a matter of law, that veterinarian's misconduct in performing an operation based on the wrong x-ray, and in failing to perform proper treatment after realizing mistake, amounted to incompetence but not "outrageous" conduct sufficient to satisfy IIED standard, despite grief suffered due to "untimely and unnecessary death" of family's pet dog); Messer v. First Fin. Fed. Credit Union of Maryland, No. 11-4144, 2012 WL 3104604, at *3 (E.D. Pa. July 30, 2012) (finding defendant's repossession and sale of plaintiff's car without legal justification, followed by fabrication of loan documents to support repossession, qualifies as "possibly fraudulent and certainly disgraceful," but not "sufficiently 'extreme and outrageous' as defined by [Pennsylvania] case law").

Although Plaintiff's allegations regarding the damage to her home and personal possessions, as well as the emotional distress she suffered in being displaced from her residence, sound extreme, unfair, and even disturbing as those terms are used colloquially, Defendants' alleged conduct still does not rise to the level of "extreme and outrageous" that has evolved in Pennsylvania case law. In that regard, I note that the conduct alleged was directed toward Plaintiff's property—not her person. In viewing the Complaint in the light most favorable to Plaintiff, she simply has not alleged facts that "go beyond all bounds of human decency." At most, Defendants' offenses could give rise to criminal liability, which alone is not enough to sustain an IIED claim. Thus, Plaintiff's claim for IIED will be dismissed.[5]

    *c. The Complaint Fails to Allege the Requisite Duty to Establish NIED Liability*

Plaintiff's Complaint does not contain factual allegations that would give rise to a duty between the parties as required under the law for Plaintiff's NIED claim. Pennsylvania courts have recognized a cause of action for NIED in four circumstances: "(1) [where] the Defendant

---

[5] Plaintiff will not be granted leave to amend her IIED claim, as any amendment would be futile. See Phillips, 515 F.3d at 236.

had a contractual or fiduciary duty toward [Plaintiff]; (2) [where] Plaintiff suffered a physical impact; (3) [where] Plaintiff was in a 'zone of danger' and at risk of an immediate physical injury; or (4) [where] Plaintiff had a contemporaneous perception of tortious injury to a close relative." Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force, 745 A.2d 25, 27 (Pa. Super. Ct. 2000), aff'd, 564 Pa. 264 (2001) (internal citations omitted).

Based on Plaintiff's allegations, only liability based upon a theory of a fiduciary or contractual relationship might support a claim. In Pennsylvania, the boundaries of this type of NIED claim are currently unsettled. Hershman v. Muhlenberg Coll., 17 F. Supp. 3d 454, 458 (E.D. Pa. 2014). In Toney v. Chester Cnty. Hosp., the lead Supreme Court case, the justices were evenly divided. 614 Pa. 98, 100, 36 A.3d 83, 84 (2011). However, those justices who would have recognized a claim offered some guidance in Toney, explaining, "NIED is not available in garden-variety 'breach of contractual or fiduciary duty' cases, but only in those cases where there exists a special relationship where it is foreseeable that a breach of the relevant duty would result in emotional harm so extreme that a reasonable person should not be expected to endure the resulting distress." Id. The lead justices in Toney further clarified that NIED liability derived from a contractual or fiduciary duty should be limited "to preexisting relationships involving duties that obviously and objectively hold the potential of deep emotional harm in the event of breach. . . . [T]he special relationships must encompass an implied duty to care for the plaintiff's emotional well-being." Id. at 117. See Weiley v. Albert Einstein Med. Ctr., 51 A.3d 202, 218–19 (Pa. Super. Ct. 2012) (finding NIED claim legally insufficient because plaintiff failed to establish that defendant hospital owed him a fiduciary duty of care).

Defendants argue that Plaintiff has insufficiently pleaded the existence of a contractual or fiduciary relationship. In viewing the Complaint in the light most favorable to Plaintiff, even if

9

she has alleged sufficient facts to support an inference of a duty, it does not rise to the level of an implied duty to care for her emotional well-being. Although the case involves Plaintiff's home and possessions, the relationship was commercial and adversarial. In drawing every possible inference in Plaintiff's favor, she may have pleaded a "garden-variety breach of contractual or fiduciary duty," but she certainly has not alleged facts to support the type of special relationship that might give rise to this incredibly narrow form of NIED liability. In confronting similar facts, my colleague Judge Yohn reached the same conclusion. See Hawkins v. Fed. Nat. Mortgage Ass'n, No. 13-6068, 2014 WL 272082, at *5 (E.D. Pa. Jan. 23, 2014) (rejecting NIED claim that Defendant "owed a fiduciary duty to the Plaintiff to not destroy her house or its contents while in the process of winterizing it"). Absent facts supporting this necessary element of NIED liability, Count VI of the Complaint will be dismissed without prejudice, allowing Plaintiff to amend if facts exist to support the requisite special relationship between the parties contemplated above.[6]

### d. Plaintiff's Request for Punitive Damages Survives the Pleading Stage

Punitive damages are "penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." Hutchison v. Luddy, 582 Pa. 114, 121, 870 A.2d 766, 770 (2005); Feld v. Merriam, 506 Pa. 383, 395, 485 A.2d 742, 747–48 (1984) ("Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."). Defendants argue that the actions ascribed to them in the pleadings could not rise to a level of wantonness or recklessness to merit punitive damages.

---

[6] The Court cautions Plaintiff that she should be mindful of the case law discussed above and only amend this aspect of her Complaint should exceptional facts exist that serve to alter the nature of her relationship with Defendants as understood herein.

Although Arndt has failed to allege the high standard of outrageous conduct required to sustain a cognizable IIED claim under Pennsylvania law, that legal conclusion does not defeat the request for punitive damages arising out of her surviving claims. In fact, "the clear trend in this Circuit is to permit adequately pled claims of punitive damages based on negligence to proceed to discovery." See Young v. Westfall, No. 06-2325, 2007 WL 675182, at *2–3 (M.D. Pa. Mar. 1, 2007) (applying Pennsylvania law). "[P]unitive damages are appropriate for torts sounding in negligence when the conduct goes beyond mere negligence and into the realm of behavior which is willful, malicious, or so careless as to indicate wanton disregard for the rights of the parties injured." Id. at *2 (citing Hutchison, 582 Pa. at 120). Moreover, "it is notable that many of the leading cases discussing the test for punitive damages in Pennsylvania have arisen in lawsuits involving causes of action sounding in negligence." Hutchinson, 582 Pa. at 125.

Because the facts alleged are sufficient to support an inference of reckless disregard to Plaintiff's rights, it is appropriate to allow Plaintiff's request for punitive damages to proceed to discovery. Accordingly, Defendants' Motions to Dismiss will be denied in this regard.

### III.     Conclusion

Based on the foregoing, Defendants' Motions are denied in part and granted in part. An appropriate Order follows.

/s/ Gerald Austin McHugh  
United States District Court Judge
